IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff<br><br>      v.<br><br>NIKOLAOS VASTARDIS,<br>EVRIDIKI NAVIGATION, INC.,<br>LIQUIMAR TANKERS MANAGEMENT<br>SERVICES, INC.,<br><br>        Defendants. | Criminal No. 19-66-RGA |

## MEMORANDUM OPINION

Richard A. Udell and Kenneth E. Nelson, Environmental Crimes Section, Environment and Natural Resources Division, Department of Justice, Attorneys for Plaintiff.

George M. Chalos and Briton P. Sparkman, CHALOS & CO, P.C. Oyster Bay, NY; and Bruce M. Merrill, Portland, ME, Attorneys for Defendants.

March 26, 2020

/s/ Richard G. Andrews
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is Defendants' Motion for a Judgment of Acquittal, or, in the Alternative, for a New Trial. (D.I. 134). I have reviewed the parties' briefing. (D.I. 134, 139, 142). I will deny Defendants' motion.

**I.     BACKGROUND**

The Defendants in this case are Chief Engineer Vastardis, who was onboard the M/T Evridiki at the time it was subject to inspection by the U.S. Coast Guard, Evridiki Navigation and Liquimar Tankers Management Services, the ship's corporate owner and corporate operator respectively. On May 16, 2019, Defendants were charged with failing to maintain an accurate Oil Record Book, falsification of records, obstruction of justice, and false statements. On December 19, 2019, after a seven-day trial, a jury found each of the three Defendants guilty on all four counts.

At the close of the Government's case-in-chief at trial, Defendants each presented motions for a judgment of acquittal. Defendant Chief Engineer Vastardis moved for a judgment of acquittal on all counts of the indictment due to insufficiency of the evidence. As to Count One of the indictment, Defendant Vastardis claimed the Government failed to prove beyond a reasonable doubt that he had knowingly and willfully caused the Master of the vessel to fail to maintain an accurate Oil Record Book. As to Count Four, Defendant Vastardis claimed that the indictment failed to specify which valve of the Oil Content Meter was fully open when the oily water separator was run at sea during normal operations.[1]

---

[1] The instant motion is brought by all Defendants, but Defendant Vastardis renewed his motion made at the close of trial without any additional argument. (D.I. 134 at 3). Then, in Defendants' Reply Brief, Defendant Vastardis made additional argument. (D.I. 142 at 2-4). The net effect is

Defendants Liquimar and Evridiki each argued that it is entitled to a judgment of acquittal on the grounds that: (1) the Act to Prevent Pollution from Ships and obstruction statutes do not apply to conduct aboard a foreign-flagged vessel outside the territorial jurisdiction of the United States; (2) the evidence that the Government submitted at trial did not establish that the chief engineer had caused the Master of the ship to fail to maintain an accurate Oil Record Book while in U.S. waters and there was insufficient evidence of the attendant obstruction of justice and false statement charges. Defendant Evridiki argued that (1) the Government failed to establish that Chief Engineer Vastardis was an employee or agent of the corporation, and (2) the Government failed to submit evidence sufficient to demonstrate that Vastardis (a) acted within the scope of his employment and (b) with the intent to benefit the corporation.

Corporate Defendants now renew their oral motions for a judgment of acquittal, pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure. (D.I. 134). In the alternative, Defendants request that the Court order a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. (*Id.*).

## II. LEGAL STANDARD

### a. Judgment of Acquittal

Rule 29 of the Federal Rules of Criminal Procedure allows a defendant to move for a judgment of acquittal following a jury verdict of guilt when the evidence is "insufficient to sustain a conviction" of the offense charged. Fed. R. Crim. P. 29. "The dispositive question for any claim regarding the sufficiency of the evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

---

that the renewed argument is improperly made for the first time in the Reply Brief, and I do not further consider it.

elements of the crime beyond a reasonable doubt.'" *United States v. Schaffer*, 777 F. App'x 581, 583 (3d Cir. 2019) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Johnson*, 302 F.3d 139, 149 (3d Cir. 2002).

In ruling on a motion for judgment of acquittal, the court must "view the evidence in the light most favorable to the verdict, and must presume that the jury has properly carried out its functions of evaluating credibility of witnesses, finding the facts, and drawing justifiable inferences." *United States v. Lacy*, 446 F.3d 448, 451 (3d Cir. 2006). Courts must be "vigilant not to usurp the role of the jury by weighing credibility and assigning weight to the evidence or by substituting its judgment for that of the jury." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005). The defendant bears a "very heavy burden" when challenging the sufficiency of the evidence supporting a jury verdict. *United States v. Coyle*, 63 F.3d 1239, 1243 (3d Cir. 1995). A "finding of insufficiency should 'be confined to cases where the prosecution's failure is clear.'" *United States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002).

### b. New Trial

Federal Rule of Criminal Procedure 33 allows a court, upon motion of a defendant, to grant a new trial if mandated by the interest of justice. *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003). In considering a motion under Rule 33, "even if a district court believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial only if it believes that there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted." *United States v. Silveus*, 542 F.3d 993, 1004-05 (3d Cir. 2008). In reviewing a Rule 33 motion, the court exercises its own judgment in assessing the case against the defendant. *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). The decision

whether to grant a new trial rests in the district court's discretion. *United States v. Noel*, 905 F.3d 258, 270 (3d Cir. 2018).

## III. DISCUSSION

### a. Judgment of Acquittal

In their joint briefing, Defendants submit that (1) Evridiki is entitled to a judgment of acquittal because the Government failed to introduce sufficient evidence to establish that Chief Engineer Vastardis was an agent or employee of Evridiki, and (2) both corporate defendants are entitled to a judgment of acquittal because the Government failed to introduce sufficient evidence to establish that they could be held vicariously liable for the acts of Defendant Vastardis. (D.I. 134 at 4-5).

A company may be vicariously liable for criminal conduct if the Government proves beyond a reasonable doubt that the criminal act was done by a corporate agent or employee acting within the scope of his authority and with the intent to benefit the corporation. *United States v. Am. Radiator & Stand. San. Corp.*, 433 F.2d 174, 204-05 (3d Cir. 1970).

Defendants argue that the record is devoid of proof that Evridiki had any employees or agents acting on its behalf and, therefore, no act charged in the indictment can properly be attributed vicariously to Evridiki. (D.I. 134 at 4). Defendants contend that the Government's evidence related to corporate vicarious liability, including the contract of employment for the chief engineer and the ship management agreement between the corporate owner and operator, failed to demonstrate that the chief engineer was an agent of Evridiki. (*Id.*). Defendants state that the Government improperly imputed liability to Evridiki on the basis that Liquimar was an agent of Evridiki and Chief Engineer Vastardis was an agent or employee of Liquimar. (*Id.*).

The Government's evidence, presented at trial, supports a basis for finding criminal liability. The record establishes that Defendant Vastardis was an agent or employee of Evridiki and that Defendant Vastardis acted as an agent of Defendants Liquimar and Evridiki with the intent to benefit the corporations.

First, the Government introduced evidence at trial that established that Defendant Vastardis was an agent of both Defendants Evridiki Navigation and Liquimar Tankers. The Government introduced the owner/operator "BIMCO" management agreement between Evridiki and Liquimar, establishing that Defendants were the owner and operator of the M/T Evridiki. Defendant Vastardis' employment contract with Defendant Liquimar indicated that Liquimar was "acting as agent of" Defendant Evridiki Navigation. The Government also presented evidence establishing Evridiki's power to hire, fire, and promote Defendant Vastardis. Therefore, sufficient evidence was presented to establish that Defendant Vastardis was an agent of Evridiki.

Second, the Government's evidence established that Defendant Vastardis acted within the scope of his authority with respect to improper operation of the Oily Water Separator and Oil Content Monitor. Defendant Vastardis was the person who was assigned responsibility to operate the Oily Water Separator and the person responsible for maintaining the ship's Oil Record Book. The Government produced evidence that Defendant Vastardis made entries in the Oil Record Book and Defendant Vastardis' signature appeared on each entry claiming the use of the Oily Water Separator and Oil Content Monitor during the period of time when he was aboard the ship. Thus, given his responsibilities and actions onboard the ship, there is sufficient evidence to support a rational jury's finding that Defendant Vastardis acted within the scope of his authority.

Third, the evidence presented at trial established that Defendant Vastardis was acting with intent to benefit the corporations. The Government presented evidence regarding the

Certificate of Compliance inspection that was a necessary precondition to conducting business in the United States. A failure to pass inspection could also lead to restrictions on the ship's ability to leave the port. Thus, intentional manipulation of the Oil Content Monitor such that oily water was improperly discharged overboard, if disclosed, would result in a failure to pass inspection by the Coast Guard. This evidence would lead a rational trier of fact to infer Defendant Vastardis' intent to pass the inspection and thereby benefit the corporations by knowingly maintaining the falsified entries in the Oil Record Book and by covering up the manipulation of the Oil Content Monitor and the falsification of the Oil Record Book during the inspection.

Based on the foregoing, a rational jury could have concluded beyond a reasonable doubt that Defendant Vastardis acted within the scope of his authority and with intent to benefit Defendants Liquimar and Evridki. Thus, I will deny Defendants' motion for judgment of acquittal.

    **b. New Trial**

In the alternative, Defendant argue that they are entitled to a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. In support of this motion, Defendants contend that the lack of evidence weighs in favor of granting a new trial and that a new trial is appropriate due to improper statements made by Government counsel that unfairly prejudiced Defendants' rights to a fair trial. (D.I. 134 at 8, 9). I disagree with Defendants.

Defendants argue that the testimony of Mr. Dolan "explicitly and affirmatively established that the actions of Defendant Vastardis were not in the course and scope of his employment **and** were a detriment, (not a benefit)." (*Id*. at 9). As discussed above, the Government's evidence sufficiently established that the actions of Defendant Vastardis were

conducted in the course and scope of his employment and that his intent to benefit the corporate Defendants could be reasonably inferred by a jury.

Defendants also assert that during the trial, the Government made multiple improper and inflammatory remarks which were beyond the scope of the Government's evidence, "intended to improperly prejudice the Defendants by stirring the jury's passions," and which "were not cured (or curable) through the instructions provided at trial." (*Id*.). Defendants identify three occasions in support of their argument. They allege Government counsel: (1) offered misleading testimony from Government expert Mr. Dolan about regulatory compliance measures undertaken by a shipping company with a "practice of non-compliance with MARPOL" and APPS, (2) sought to introduce improperly another company's conviction during re-direct of Mr. Dolan, and (3) made multiple material misstatements of the law during closing arguments by representing to the jury that it was not to consider the "lack of evidence" in the case. (*Id.* at 10-11). Defendants assert that each instance on its own would provide sufficient grounds to set aside the conviction and order a new trial. (*Id.* at 12). In light of the strong evidence presented in support of Defendants' convictions, however, Defendants fail to explain why or how the actions, even if they were erroneous, were so unfairly prejudicial that the guilty verdicts represent a serious danger of a miscarriage of justice.

**First**. Government counsel asked its expert, Mr. Dolan, about measures taken by companies in an effort to minimize legal violations. Defendants state that the testimony was misleading because Mr. Dolan was testifying about measures taken by a "serial offender" with a history of non-compliance with MARPOL and APPS. (*Id.* at 10).

> GOVERNMENT COUNSEL: Are there things that you've seen companies do to minimize violations?

MR. DOLAN: Yeah, there's a number of things that companies do to minimize – to minimize actually having to deal with bilge water which hopefully minimizes violations.

[….]

Companies have gone to the extent of installing what we call a white box. A white box is – is another –

DEFENSE COUNSEL: Objection, Your Honor. Relevance.

THE COURT: Overruled.

MR. DOLAN: [….] Now, some companies put extra separators on because they can clean their bilge tank internally which is circulating before they put it in the oily water separator. So there's a lot of different things that companies do to try to minimize or at least get their bilge water to a point where it's clean enough to manage easily.

GOVERNMENT COUNSEL: Did the Evridiki have a white box?

MR. DOLAN: No.

GOVERNMENT COUNSEL: Did the Evridiki have a second tank to settle out or separate oil from water prior to the bilge holding tank or prior to processing by the oily water separator/

MR. DOLAN: No. At least according to the IOPP, no.

(Tr. 1162:19—1164:18).[2]

At trial, Defendants brought out steps the companies took to comply with the law, such as having posters emphasizing required practices. The Government brought out steps the companies could have taken but did not. The quoted testimony was thus at least minimally relevant. Since there was no error in its admission, that ends Defendants' argument. But even if it were erroneously admitted, it would not have made any difference to the verdict. In light of the strong

---

[2] The trial transcript can be found at D.I. 155-161. The document items are paginated consecutively.

evidence of Defendants' guilt introduced at trial, I would decline to find Mr. Dolan's testimony about regulatory compliance measures so misleading that a new trial is warranted.

At trial, the Government presented evidence that the Oily Water Separator was not functioning properly and that Defendant Vastardis operated the system with an unmonitored valve on the sample line in a closed position, preventing the device from receiving a sample of the bilge waste and accurately determining the concentration of oil. This process did not allow the required pollution prevention equipment to do its job. The Government presented considerable evidence that during the inspection of the ship's Oily Water Separator, it was incapable of filtering oily bilge water such that it contained no more than 15 ppm oil, as was required under law. Despite the failure of the Oily Water Separator to function properly, testimony by Coast Guard inspectors and video documentation of the operation of the Oil Content Monitor showed beyond any doubt regular readings indicative of fresh water being processed through the Oily Water Separator. This, in turn, could (and evidently did) lead a reasonable jury to determine that there was manipulation of the Oil Content Monitor and failure of the M/T Evridiki to follow a MARPOL-compliant discharge of bilge waste.

In light of the above evidence, testimony by Mr. Dolan about purported steps taken by responsible shipping companies above and beyond the required regulations, and any concomitant legally irrelevant insinuation that Defendants in this case did not comply with the same, would not inflame the passions of the jury such that a guilty verdict here presents a serious danger of a miscarriage of justice. *See Silveus*, 542 F.3d at 1004-05.

**Second**. Defendants assert that Government counsel's question about another company's conviction caused "inflammatory prejudice" to Defendants. (D.I. 134 at 11). During re-direct of

its expert Mr. Dolan, the following exchange occurred between Government counsel and Mr. Dolan:

> GOVERNMENT COUNSEL: You were asked some questions about some case that you testified in Norfolk.
>
> MR. DOLAN: That's correct. Yes.
>
> GOVERNMENT COUNSEL: And you testified that the engine room appeared to be well kept, well managed. Do you recall that?
>
> Mr. DOLAN: Yes, I do.
>
> GOVERNMENT COUNSEL. Was that company convicted?
>
> DEFENSE COUNSEL: Objection.
>
> THE COURT: Mr. Udell, what's wrong with you?
>
> GOVERNMENT COUNSEL: I'm sorry, Your Honor.
>
> THE COURT: So the question is stricken. Ignore the question and put it out of your mind.

(Tr. 1248 at 1-12).

"A prosecutor may not make an appeal to the jury that is directed to passion or prejudice rather than to an understanding of the facts and of the law." *United States ex rel. Perry v. Mulligan*, 544 F.2d 674, 680 (3d Cir. 1976). "Improprieties in prosecutor's remarks warrant a new trial only if they are so gross that there is a probability of prejudice to the defendant [ ] and such prejudice was not neutralized by the court." *United States v. Gaines*, 726 F. Supp. 1457, 1469 (E.D. Pa. 1989), *aff'd*, 902 F.3d 1562 (3d Cir.). "Moreover, any harm from prosecutorial misconduct must affect a substantial right and the prejudice must be balanced against the evidence of guilt." *Gaines*, 726 F. Supp. at 1469. As the Supreme Court has stated: "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as

11

to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *see also United States v. Blevins*, 555 F.2d 1236, 1240 (5th Cir. 1977) (finding that to warrant a new trial, prosecutorial misconduct in the form of improper comment or questioning "must be so pronounced and persistent that it permeates the entire atmosphere of the trial.").

Under the circumstances presented here, it is extremely unlikely that the prosecutor's question suggesting a prior company's conviction had any effect on the outcome of the trial. The Court rather injudiciously[3] sustained Defendants' objection to the question and Mr. Dolan never answered the question. There was never any evidence introduced regarding the company's conviction. *See United States v. Farmer*, 73 F.3d 836, 844 (8th Cir. 1996) (determining that prosecutor's improper references to defendant's prior bad acts were harmless where defense counsel immediately objected, the witness never answered the question, and the prosecutor did not raise the topic during the remainder of the trial). The Court's prompt and unequivocal admonition to the prosecutor, and instruction to the jury to disregard the prosecutor's question, precluded perceptible prejudice to Defendants. *Cf. United States v. Sturm*, 671 F.2d 749, 751-52 (3d Cir. 1982) (finding that immediate curative instruction averted prejudice to defendant from question regarding his pretrial efforts to seek immunity).

The prosecutor's question regarding another company's conviction, while improper, had no impact as it was not answered and there was strong evidence of Defendants' guilt presented at trial. *See United States v. Vitillo*, 490 F.3d 314, 326 (3d Cir. 2007). In light of the strong evidence of the Defendants' guilt in this case, coupled with the court's curative instructions, I do

---

[3] I still cannot fathom what the prosecutor was thinking in asking the question. To the extent the jury took anything away from the quoted exchange, it did not help the Government.

12

not believe that the effect of this one unanswered question over the course of the seven-day trial tainted the proceedings to a degree requiring the grant of a new trial.[4]

**Third**. In closing arguments, counsel for the Government stated:

> Mr. Sparkman, in his closing statement, said something that I think is particularly informative. He said that the point of Mr. Chalos and Mr. Merrill's presentation was to focus your attention on evidence that's not before you which the judge has instructed you you may not consider.

(Tr. 1446:20-24). Defendants state that, "in a case involving only scant circumstantial evidence," Government counsel's statement to the jury that it was not to consider the "lack of evidence" in the case was prejudicial. (D.I. 134 at 11-13).

Defendants timely objected during trial. (Tr. 1447:14—1449:10). Prior to completing[5] the final jury instructions, the Court specially instructed the members of the jury that they were to rely on their own independent recollection of the evidence or the lack thereof, notwithstanding any statements made to the contrary during closing arguments:

> THE COURT: So members of the jury, I'm about to start on page 22. But before I do that, there's one thing that has been raised in the arguments, and so I want to point out that I am shortly going to read you a sentence that says, in part, you should rely upon your own independent recollection of the evidence or lack of evidence, and then it goes on. But to the extent that you heard anything in closing arguments that was contrary to that instruction stated by one or more of the lawyers of stating what the law is, that's what the law is.

(Tr. 1450:19–1451:3). Shortly thereafter, the Court again instructed the jury that it could consider the evidence or lack of evidence:

---

[4] Juries are presumed to follow the Court's instructions. Not only did the Court give an immediate curative instruction, but the Court also told the jury in the preliminary jury instructions not to speculate about questions that were not answered. "The following are not evidence: […] Questions by the lawyers and questions that I might ask." (Tr. 220:17-20). Whenever I sustain an objection, you must disregard the question […] entirely. Do not think about or guess what the witness might have said in answer to the question." (Tr. 222:9-12).
[5] I present most of the final jury instructions before closing arguments.

13

> THE COURT: You should rely upon your own independent recollection of the evidence or lack of evidence [...].

(Tr. 1452:10-11).

"[W]e presume that the jury will follow a curative instruction unless there is an 'overwhelming probability,' that the jury will be unable to follow it and a strong likelihood that the effect of the [statement] would be 'devastating,' to the defendant." *United States v. Newby*, 11 F.3d 1143, 1147 (3d Cir. 1993). There is no such overwhelming probability here. Moreover, in light of the aforementioned strong support for the Government's theory in the record, the prosecutor's comments, even if an incorrect statement of the law, were not sufficiently prejudicial to Defendants to warrant a new trial. *See Gaines*, 726 F. Supp. at 1469.

Defendants have failed to demonstrate that their right to a fair trial was substantially compromised such that granting a new trial would be appropriate. Because I find that there is sufficient evidence to uphold the verdict and because I do not find that the interests of justice otherwise require the grant of a new trial, I will deny Defendants' motion for a new trial.

## IV. CONCLUSION

For the reasons discussed above, I will deny Defendants' motion. An accompanying order will be entered.